Thurman O. CRAPPS, Plaintiff,

v.

Francis G. DUEHAY and H. M. McLeod, District Director of Internal Revenue, Defendants.

Civ. A. No. 7300.

United States District Court
E. D. South Carolina,
Charleston Division.

May 3, 1962.

---

W. Brantley Harvey, Jr., Harvey & Harvey, Beaufort, S. C., for plaintiff.

Leon W. Vaseliades, Attorney, Department of Justice, Washington, D. C., for defendants.

MARTIN, District Judge.

This is an action to recover fifty dollars paid by the plaintiff under protest in partial satisfaction of a cabaret excise tax assessment levied by the defendant in the amount of $8,922.41, plus a delinquency penalty of $1,917.07, plus interest in the amount of $760.76, amounting in aggregate to $11,600.24, for the third quarter of 1957 through the second quarter of 1959. The plaintiff filed a claim for refund of the fifty dollars paid and upon disallowance brought this suit against the defendant. The United States was granted leave to intervene by order of court, dated January 19, 1961, and it thereafter filed its complaint in intervention for $11,550.24 (the total assessment, less the fifty dollars paid).

The facts in this action are based upon the deposition of the plaintiff.

The plaintiff operated an establishment known as "Island Inn" near the main gate of the Parris Island Marine base from July 1957 until January 1961. The Island Inn occupied a building 30 by 50 feet. The building was primarily one large room with a small kitchen and bathrooms. The large room contained a bar at one end, ten to fifteen tables down one side, and a 12 by 15 foot floor area sometimes used for dancing to the music of a coin operated juke box. No admission was charged for admittance to the Island Inn, no fee was charged for dancing, nor was there any cover charge imposed. The prices of the merchandise sold were approximately the same as those of other establishments in the area.

The plaintiff did not own the juke box but he did receive one-half of the receipts therefrom, the coins for the juke box being furnished by the customers.

The plaintiff opened his establishment at 4:00 p. m. and remained open until 1:00 a. m. The bulk of his business was done between the hours of 10:00 p. m. and 1:00 a. m. In relation to dancing the plaintiff said that he permitted dancing in the Island Inn.

During the deposition, the following colloquy took place between L. W. Vaseliades, Attorney for the defendant, and the plaintiff:

"Q. You didn't object to anyone dancing in there did you?

"A. Well, now when I opened the place up I asked everybody I could think of about taxes, what about this entertainment tax, cabaret tax, no body knows nothing about it. One guy told me if you have a live band your're supposed to have a cover charge, charge go up a nichol [nickel] or dime on your beer and twenty per cent. I never did have a live band, never did have dances. Boys and girls off the Island after the club closed up over there came out once or twice a week and danced with me. Other than that wasn't nobody there.

"Q. Juke box was available there at any time?

"A. Oh, yes.

"Q. Could be played at any time?

"A. Yes.

"Q. Dance floor was available always?

"A. Didn't use it during the day up until about 10:00 o'clock at night.

"Q. The dance floor was available at all hours?

"A. Oh, yes.

"Q. You didn't object to anyone dancing whenever they felt like it?

"A. No, I didn't.

"Q. All right, sir.

"A. It wasn't used up until about 10:00 o'clock at night."

Three questions are presented by this case: (1) Whether the taxpayer's establishment constituted a public place affording music and dancing privileges to its patrons so as to render him liable for the cabaret tax imposed by Sections 4231(6) and 4232(b) of the Internal Revenue Code of 1954, as amended, for the periods involved. (2) If the establishment came within the purview of the statute, what portion of the sales are subject to tax. (3) Whether the taxpayer's failure to file timely excise tax returns for the periods involved was due to reasonable cause.

The relevant sections of the 1954 Revenue Code applicable to cabaret tax are as follows:

§ 4231(6) "Cabarets.—A tax equivalent to 20 [1] percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. * * * "

§ 4232(b) "The term 'roof garden, cabaret, or other similar place,' as used in this chapter, shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, except instrumental or mechanical music alone, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret, or other similar place.' *Such term does not include any place if—*

"(1) *no beverage subject to tax under chapter 51 (distilled spirits, wines, and beer) is served or permitted to be consumed;*

"(2) *only light refreshment is served;*

"(3) *where space is provided for dancing, no charge is made for dancing; and*

"(4) *where music is provided or permitted, such music is (A) instrumental or other music which is supplied without any charge to the owner, lessee, or operator of such place (or to any concessionaire), or (B) mechanical music.*" [2]

Counsel for the plaintiff cite in their brief three cases which have held cabaret tax to be collectible under circumstances similar to those presented in this case, but argue that all three are erroneous on the ground that an establishment such as Island Inn is not a cabaret within the provisions of Sections 4231(6) and 4232 (b) supra since music is not afforded the customers within the meaning of the statute. Counsel contend that the word "afforded" should be applied in its ordinary and usual meaning of "to give, provide or furnish", and that permitting a coin operated juke box to be operated cannot be said to be affording music within the terms of the statute.

This argument is not tenable, especially in the light of the "milk bar" amendment of 1958. (Amendment to § 4332(b) supra.) In fact, the amendment would probably have excluded the plaintiff's establishment after January 1, 1959, if he had not sold beer. The amendment makes it clear that the Congress intended

---

1. The rate of tax was reduced to 10 percent by Pub.L. 86–422 effective May 1, 1960.

2. The italicized portion was added by amendment, Pub.L. 85–859, 72 Stat. 1275 § 131(d) effective January 1, 1959.

to impose the cabaret tax on certain beer-selling establishments by exempting non beer-selling establishments from the tax.

Aside from the effect given to the "milk bar amendment", the cases which have been decided are controlling.

In Baldwinson v. United States (W.D. Wash.1948) 80 F.Supp. 687. The plaintiff, taxpayer, brought an action to recover taxes which were levied by the Bureau of Internal Revenue under the provisions of Section 1700(e) (1) [§ 4231 (6) and 4232(b) supra] of the Internal Revenue Code, as amended. The defendant moved to dismiss the complaint.

The plaintiff operated a place of business known as "Baldy's Tavern" at which he served beer and wine and other merchandise and permitted customers to dance to the music of a coin operated juke box. The customers inserted their own coins in the device which was not owned by the plaintiff. No other music or entertainment was provided. No admission or fee was charged; there was no charge for dancing; and there was no cover charge or increase in the prices of the goods sold.

The plaintiff argued that he did not furnish the music because he did not own the juke box and because the customers operated the box on their own. The court, however, rejected this contention on the grounds that the plaintiff permitted the installation of the juke box shared in the receipts and furnished the place where the dancing occurred, thus bringing himself clearly within the language of the statute.

The court granted the defendant's motion to dismiss.

In Jones v. Fox (D.Md.1957) 162 F. Supp. 449. The plaintiff, taxpayer, brought this action to recover $50.00, paid under protest, in partial satisfaction of a cabaret excise tax assessment levied by the District Director of Internal Revenue.

The plaintiff operated an establishment near the District of Columbia where he sold food and refreshments and permitted his customers to dance to the music of a juke box. The patrons supplied the coins for the operation of the device but no admission was charged and the price of food and refreshments was approximately the same as charged by other places in the area.

The court held that the business was subject to the cabaret tax. The Court said:

"This court, accordingly, holds that the plaintiff's method of operation, where his principal if not entire source of income, was from the selling of food, refreshments, and merchandise, subjects the receipts therefrom to a tax under the provisions of Section 1700(e) (1) [§ 4231(6) and 4232(b) supra] of the Internal Revenue Code of 1939." pg. 462.

In Billen v. United States (10th Cir. 1960) 273 F.2d 667. The taxpayer operated an establishment known as the "Corn Crib" near Oklahoma City. An admission charge of fifty cents per person was charged but no entertainment was furnished other than dancing privileges. The music was provided by a juke box at the expense of the customers.

The taxpayer sold setups, hamburgers, coffee, soft drinks and other refreshments. The taxpayer derived approximately one-half of his total receipts from the sale of the merchandise and the other half from the admission charge.

The issue in the case is whether the operation of the business is subject to tax.

The taxpayer argued that the 1951 amendment [3] exempted his operation

---

3. § 1700(2) (1) of the Revenue Act of 1939, 26 U.S.C.A. § 1700(2) (1) was amended by § 404 of the Revenue Act of 1951 by adding the following: "In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret, or other similar place'."

from tax liability on the grounds that the service of food etc., was incidental to the dance hall. The court rejected the argument, holding that the fact to be considered in determining whether the food was incidental was that of relative revenues and since the taxpayer derived fifty percent of his revenues from the service of food it was not incidental.

The second question is what portion of the plaintiff's gross receipts are subject to tax. The United States contends that all the sales made by the plaintiff are taxable on the grounds that "it is the privilege of dancing to music which is taxed" and it is not necessary, therefore, that patrons actually be dancing when the sales are made in order for such sales to be taxable. The Commissioner, however, assessed only ninety percent of the sales and the tax which is claimed to be due is based on that percent.

The plaintiff contends that only the sales made between the hours of 10:00 p. m. and 1:00 a. m., which plaintiff claims amounted to fifty percent of his total sales, should be taxed. Plaintiff grounds his contention on his own testimony to the effect that no dancing took place until after 10:00 p. m., although his customers could have danced anytime he was open for business if they had so desired.

■ Cabaret tax liability is not incurred where dancing is not permitted and the taxpayer in good faith prevents or promptly stops attempted dancing in his place of business. The existence of a floor suitable for dancing, the availability of juke box music and the occasional thwarted attempts by patrons to dance are not in themselves alone sufficient to incur a cabaret tax liability. Under such circumstances, there would be no public performance and the patrons would not be entitled to view any public performance. Christie v. United States, (D.Ore. 1959) 179 F.Supp. 709.

In the case of Bush's Inc. v. United States (7th Cir. 1960) 277 F.2d 780 the taxpayer provided entertainment from midnight until 3:00 a. m. Some of the customers who had made purchases prior to the beginning of the entertainment remained during a portion of the entertainment. It was readily admitted by the taxpayer that the sales made during the entertainment were subject to the Cabaret Tax. The United States contended that in addition one-third of the sales made from 8:00 p. m. until the entertainment began were subject to the tax on the grounds that an estimated one-third of the persons in attendance during those hours remained and were entitled to remain to view and participate in the taxable entertainment, and one-half of the sales made from the termination of the entertainment until the establishment closed were subject to tax on the grounds that an estimated one-half of the persons then in attendance had been present and were entitled to have been present to view and participate in the earlier entertainment.

The District Court held that "Congress had not intended to levy a tax on the receipts collected for refreshments before the beginning or after the conclusion of the entertainment which qualified the rooms as cabarets within the meaning of the statutes, and that other than during the time of the taxable entertainment, the rooms were not cabarets." He also held that "receipt of payment before or after the taxable entertainment, when the rooms were not cabarets, did not entitle the customers, from whom the payment was received, to be present during the entertainment." Page 782.

The Circuit Court affirmed the District Court holding that only sales made during the period of entertainment were subject to tax.

The case of United States v. Eddy Brothers, Inc. (8th Cir. 1961) 291 F.2d 529 held that amounts paid by patrons for food and refreshments which were ordered, served and paid for prior to the commencement of the entertainment, where the patrons remained in plaintiff's establishment for a portion of the entertainment, are not subject to Cabaret Tax on the ground that such patrons were not "entitled to be present during any portion of such performance."

In both of the cases discussed above the character of the establishment was changed at a specified time. The cases considered only the question of whether the sales made to patrons during the "restaurant" period of operation and who remained for the "entertainment" period were taxable. In the instant case, there was no definite schedule for changing from a restaurant to a cabaret.

The two cases discussed above show that an establishment may be subject to cabaret tax during one portion of its operation and not subject to tax during another portion depending upon the character of the establishment during the period in question. The character is determined by the activity carried on during the period.

In the present case, the character of the "Island Inn" remained the same during all periods of operation. The tax is imposed " *   *   * where music and dancing privileges *   *   * are afforded *   *   *." The fact that none of the patrons present during the period from opening time until 10:00 p. m. engaged in dancing, does not exempt the sales made during that period from the tax.

The remaining question is whether the plaintiff is subject to a penalty of twenty-five percent for failure to file timely returns. Section 6651(a) of the Internal Revenue Code of 1954 provides:

"In case of failure to file any return required under authority of subchapter A of chapter 61 (other than part III thereof), of subchapter A of chapter 51 (relating to distilled spirits, wines, and beer), or of subchapter A of chapter 52 (relating to tobacco, cigars, cigarettes, and cigarette papers and tubes), or of subchapter A of chapter 53 (relating to machine guns and certain other firearms), on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate."

The plaintiff stated in his deposition that he attempted to operate his business in the same manner in which his predecessors had operated it for a substantial period of time; that his operation was substantially the same as that generally conducted by others in the same area; that he had inquired of Agents of the State of South Carolina who checked his licenses and permits; that he was never furnished returns or blanks or notified in any way that Cabaret Tax might be due.

Evidently the plaintiff, by trade, is a railroad fireman who operated the "Island Inn" only during a lay-off by the railroad.

The failure to file a return is excused where the taxpayer exercises ordinary business care and prudence. Haywood Lumber & Milling Co. v. Commissioner of Internal Revenue (2 Cir. 1950) 178 F.2d 769.

The plaintiff failed to show that he exercised ordinary business care and prudence in ascertaining whether his operation was subject to the Cabaret Tax. There was no evidence that the plaintiff sought the advice of an attorney or accountant nor is there any evidence that he sought information from the defendant or that he took any other positive action to determine whether his operation was subject to tax. In the absence of such evidence, the penalty must be imposed.

Judgment is hereby given for the United States in the amount of Eleven Thousand, Five Hundred Fifty and 24/100 ($11,550.24) Dollars, and

It Is So Ordered.