**Larrye SITNICK and Benjamin Meyers**

v.

**UNITED STATES of America.**

Civil No. 15686.

United States District Court
District of Maryland.

July 14, 1965.

ment of $104,569.26 in tax plus penalties of $37,124.68 and interest of $53,048.75. The total, including $438.57 of depository receipts, comes to $195,181.26. This total assessment covers the period from May 1, 1950 through December 31, 1959.

There are several issues in this case, but they can be boiled down to the following: 1) whether the Avenue Musical Bar (Avenue) is a cabaret within the meaning of § 1700(e) 1939 Code and § 4232(b) 1954 Code; 2) whether, if the Avenue is a cabaret, the receipts from the side bar are subject to the tax; 3) whether the 25% additions to the tax under the 1939 Code and the 50% addition under the 1954 Code were correctly assessed; and 4) whether the plaintiffs are liable for the penalty imposed under § 6656(a) of the 1954 Code for failure to deposit federal excise taxes. Since I find for the plaintiffs on the second issue I shall consider it first.

During the period in question the plaintiffs operated the establishment known as the Avenue Musical Bar located at 1550 Pennsylvania Avenue in Baltimore, Maryland. From May 1950 until July 1952 the Avenue consisted of two separate bars; the smaller lounge or side bar (where no entertainment was provided), and the larger main bar (where a combo performed in the evenings from 9:00 p. m. until 2:00 a. m.; and on Sundays from 6:00 to 8:00 p. m. as well). The plaintiffs claim that until the time when it closed in July 1952 the lounge opened at 8:00 a. m. and stayed open until closing. The lounge had its own entrance on Pitcher Street and was separated from the main bar by other rooms. There. was, however, an eighteen-foot long connecting hallway between the lounge and main bar. The Government contends that there was no obstruction of any kind placed in the hallway which would have prevented . lounge patrons from going into the main bar. And it adds that lounge patrons did frequently go into the main bar while the entertainment was on. Assuming its

Robert L. Sullivan, Jr., Thomas W. Lewis, and Barry I. Robinson, Baltimore, Md., for plaintiffs.

Thomas J. Kenney, U. S. Atty., and Robert W. Kernan, Asst. U. S. Atty., Baltimore, Md., and Allen L. Schwait and Moshe Schuldinger, Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., C. Moxley Featherston, David A. Wilson, and Allen L. Schwait, Dept. of Justice, Washington, D. C., and Thomas J. Kenney, U. S. Atty., Baltimore, Md., on the brief), for defendant.

NORTHROP, District Judge.

This action arises as a result of the disallowance of plaintiffs' claim for refund of payment of excise tax and penalties and interest. On February 2, 1964, plaintiffs made a partial payment to the United States (Government) of $1,767.57; this represented an excise tax of $1,170.92 and penalty and interest of $596.65 assessed against them for the first quarter of 1959. The Government has counterclaimed for its full assess-

version of the facts, the Government then claims that 50% of the lounge's receipts were subject to the tax.[1]

■■ The plaintiffs have the burden of overcoming the presumption of the correctness of the Commissioner's assessment. Helvering v. Taylor, 293 U.S. 507, 55 S.Ct. 287, 79 L.Ed. 623 (1935); C. I. R. v. R. J. Reynolds Tobacco Co., 260 F.2d 9 (4th Cir. 1958); 9 Mertens, Federal Income Taxation, § 50.65 (Zimmet Rev.1958). And the plaintiffs have the further burden of establishing facts from which a proper determination could be made. Compton v. United States, 334 F.2d 212 (4th Cir. 1964); Roybark v. United States, 218 F.2d 164 (9th Cir. 1954). By way of explaining the nature of a taxpayer's burden, the court in Compton said the following at page 218 of 334 F.2d:

"By alleging in her complaint that she was not engaged in accepting wagers, she recognized that this question would materially affect her right to a refund of taxes paid. Her allegations were denied. The burden was on the plaintiff to prove that she was not engaged in accepting wagers during the period in question. * * * Even assuming that the assessment was thereby rendered invalid, plaintiff could not recover without a further showing that she did not in fact owe all or some part of the amount collected. Her attempt to do so failed when the District Court rejected her testimony that she had not been engaged in the numbers business during the period in question."

Analogously, in the instant case the plaintiffs contend and must show that there *was* an obstacle (either in the form of a "guard" or an iron gate) in the passageway between the lounge and the bar, that the entertainment in the bar was not available to lounge patrons, and that hence no tax was owing on lounge receipts. The only evidence tending to support the Government's version of the facts is found in the deposition of Augustus D. Knox. And the testimony therein is not exceptionally persuasive.

■ The plaintiffs, on the other hand, offered substantial testimony at trial that lounge patrons had no access to the main bar—or its entertainment. From all the evidence I find that there was an iron-gate barrier separating the lounge from the bar. Thus the "separate room" exception to the excise tax *does* apply in this case. See In re Duffin, 141 F.Supp. 869 (S.D.Cal.1956).[2] And plaintiffs have more than met their burden of overcoming the presumption in favor of the Government's position. Helvering v. Taylor, supra. Therefore no tax (nor penalty nor interest) is due on the lounge receipts taken in from May 1950 to July 1952. And as to this item the Government's assessment is incorrect and must be reduced accordingly.

The plaintiffs, on the other hand, have not met their burden of showing that no tax would be due on receipts taken in at the main bar. It was there that the combo gave its nightly performance. And the Government has offered ample

---

1. For the sake of argument and in order to consider the "separateness" of the lounge bar, I have assumed that the entertainment in the main bar would make receipts there taxable.

2. Citing Treasury Regulation § 101.14 which is also controlling here. It provides that "amounts paid for refreshment, service or merchandise in a room which is entirely separate from the room in which entertainment is furnished are not subject to tax, provided that the patrons in such separate rooms may not

witness the entertainment and any door in the wall or partition separating the two rooms remains closed during the period of the entertainment except where persons pass from one room to the other." In Duffin the so-called "separate room" was separated from the main dancing area by a lattice-work partition with openings at either end; it could be seen through and the music was easily audible in the bar area. Here, there is no indication that like circumstances prevailed, nor that the combo in the main bar could be easily seen or heard in the lounge.

and credible testimony to reinforce the presumption in its favor that the kind of entertainment offered created tax liability.

Regarding the imposition of the tax the controlling sections of the statute are section 1700(e) of the Internal Revenue Code of 1939; and sections 4231(6) and 4232(b) of the 1954 Code. Section 4231(6) sets forth the tax rate and the kinds of establishments where the tax shall be imposed.[3] Section 4232(b) defines which are the establishments that shall be considered roof gardens, cabarets, etc., for tax purposes. It reads:

"(b) *Roof garden, cabaret or other similar place.*—The term 'roof garden, cabaret, or other similar place,' as used in this chapter, shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, *except instrumental or mechanical music alone,* are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise. In no case shall such term include any ballroom, dance hall, or other similar place where the serving or selling of food, refreshment, or merchandise is merely incidental, unless such place would be considered, without the application of the preceding sentence, as a 'roof garden, cabaret, or other similar place.' "
(Emphasis supplied)

It is fairly clear at the outset that plaintiffs can not and do not attempt to come under the dance hall umbrella. There was no evidence of dancing activity and indeed, if there were, given the evidence describing the character of the Avenue it would simply make out another case of tax liability. In re Duffin, supra.

The evidence adduced at the trial indicates that in addition to playing their instruments certain members of the combo would sing and tell jokes. The evidence further showed that entertainment in this form was frequent if not nightly. And there was no credible testimony tending to show any rigorous efforts on the part of the owners or the manager to curb or stop the singing and joke telling. In United States v. Ritchie, 327 F.2d 732 (5th Cir. 1964), the court considered the import of the "instrumental or mechanical music alone" exception; it said at page 736:

"The trial court was correct in concluding that the act expressly exclude[d] places where mechanical music alone is furnished, but when a place for dancing is added, mechanical music alone is no longer furnished and this exclusion is no longer effective to bring an establishment out from the coverage of the statute."

In Bush's Inc. v. United States, 171 F. Supp. 681 (E.D.Ill.1959), the court was primarily concerned with what portions of the sales and services rendered during the evening's entertainment hours— midnight to 3:00 a. m.—would be subject to the tax. And it simply assumed that when the singer came on at midnight, the taxable period began.

The newspaper articles admitted into evidence, and the testimony of Shirley Kyle, Arthur Ringgold, Robert Lee Nelson, William Fauntleroy, Frances Borden, Claude Grant and others all indicate that the Avenue's brand of entertainment clearly went beyond the bounds of mechanical or instrumental alone.

The deposition of Claude Grant contains the following colloquy between

---

3. "Sec. 4231. Imposition of tax
 "There is hereby imposed:
 "(6) *Cabarets.*—A tax equivalent to 20 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The tax imposed under this paragraph shall be returned and paid by the person receiving such payments. * * * "

Grant and Allen L. Schwait, the attorney for the Justice Department:

"Q Have you performed at the Avenue Bar?

A I have.

Q When did you perform there?

A Sometime between September of 1956, off and on, until 1959. I think it was sometime in '59.'

Q Were you a leader of a group there?

A At one time, yes, for a short period of time, at any rate.

Q At other times, you were part of someone else's group?

A Yes.

Q What did you do at the Avenue Bar?

A Well, I was an organ player there the majority of the time with Al Baitch.

Q Is that your answer?

A Yes.

Q Did you sing?

A Sometime, yes. I will tell you what happened. I am aware of what this is about. There had been something said to us along the line of singing, because most things, people didn't sing.

Q Did you sing?

A Yes.

Q How often did you sing? How many numbers did you sing?

A There wasn't a specified number. As a matter of fact, I don't classify myself as a singer.

Q Did you sing?

A Yes."

Frances Borden testified that she worked at the Avenue as a waitress from 1952–1956. She said that she worked from 6:00 p. m. until closing. At that time "Flink" Johnson was one of the performers at the Avenue. She said that he sang and clowned. William Fauntleroy also worked at the Avenue for a number of years and in the course of his employment had had frequent op-portunity to witness the entertainment. His testimony confirms that of Frances Borden and the others. He testified that he also saw "Flink" Johnson sing and do his "witty" numbers. Fauntleroy also saw Al "Mad-Man" Baitch's group and heard Grant sing some numbers. And Shirley Kyle, a patron of the Avenue in the '50's stated that she saw the Baitch and Johnson groups perform. She said that Baitch had a vocalist and that "Flink" Johnson did an act like an M.C. —that he played, sang and told jokes. She also testified that she saw no one attempt to stop anyone from singing or telling jokes. The list of witnesses goes on, and the testimony varies only slightly.

██ From the testimony then, it is undisputed that a regular feature of the entertainment at the Avenue was the singing and joking of various members of the combo. Hence, the Avenue can be classified as a cabaret and primary liability for the tax is therefore clearly established. Further, there is no evidence that the owners or the management made serious efforts to confine the entertainment there to strictly instrumental music. And the suggestion by plaintiffs that they did not permit singing and joking is incredible. On the contrary, they did not make good-faith efforts to prevent it; therefore, they are not protected. The Avenue's brand of entertainment classifies it as a cabaret within § 4232(b). Crapps v. Duehay, 208 F.Supp. 344 (E.D.S.C.1962).

Since I have found in favor of the plaintiffs on the issue of the tax assessed against the side bar's receipts, I do not have to determine the reasonableness or accuracy of the government's figure of taxing 50% of those receipts. But having found for the Government on the main issue of taxability I am faced with the reasonableness of its determination that 95% of the income in the main bar came during the entertainment period.

██ The Government relies on the following to support the Commission's findings: the testimony of Frances Bor-

den, the hours of the entertainment, the time the main bar opened, the prices of drinks before and then during the entertainment, the Maryland amusement tax figures, the number of barmaids and waitresses, and the salaries paid the entertainers. Plaintiffs contend that 50% is a maximum figure; and urge that the court note the employment schedule and accept its argument that it would be unreasonable to stay open for 12 hours, from 9:00 a. m. to 9:00 p. m. just doing 5% of one's gross business. Or if other opening times are believed as more accurate, for example 3:00 or 5:00 p. m., still 6 hours or 4 hours is a long time to do so little business. There are two fallacies in plaintiffs' argument. First the comparatively small percentage of business done before entertainment hours does not necessarily mean that the gross amount of receipts would not warrant keeping the bar open during these slower hours. On the contrary, it could be taken to mean that while during the entertainment hours there was boom, prior thereto there was not necessarily bust. Second, there is no inexorable logic that requires food and drink establishments to remain shut during slower periods when it is perhaps uneconomical to stay open for business. It is common knowledge that food establishments catering to business men for mainly luncheon and some breakfast trade remain open from 7:00 a. m. to 4:00 or 5:00 p. m., yet they do practically *all* of their business during the breakfast and lunch hours. Accepting the inferences deducible from plaintiffs' argument, such places should shut their doors say from 9 to 12 and again at 2. This would be patently absurd.

█ As the Government asserts in its brief, the plaintiffs were required to keep books and records containing sufficient information to allow the Commissioner to determine whether the correct tax was being paid.[4] In this case plain-

4. The applicable provisions are found in § 1720 (1939 Code) and Regulations thereunder, namely Treasury Regulations 43, § 101.32(b); and in Temporary Treasury Regulations Under Excise Tax Technical Changes Act of 1958, § 148.1–6(c) (4). The regulations are as follows:
Treasury Regulations 43 § 101.32 Records; Admission.
"(b) *Admissions subject to tax under section 1700(e), as amended.*—(1) Every person required to pay the tax imposed by section 1700(e), as amended, on charges made for admission, refreshment service, and merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, must keep or cause to be kept adequate and *sufficient records with respect to the operations for each day* on which such public performances are held showing (i) the receipts from charges made for admission, refreshment service, and merchandise paid by all patrons entitled to be present during any part of the performance; and (ii) the tax due. Where the passing on of the tax is evidenced by the use of waiters' checks or bills which show the tax as a separate item or by the use of a cash register which records the tax under separate symbols on the cash register tape, as provided by paragraph (d) (1) or (2) of § 101.13, the total receipts from patrons (exclusive of tax) and the total

taxes passed on to them as disclosed by waiters' checks or bills or the cash register tapes for each day should be entered in the daily record. Where the tax is not shown as a separate item but the passing on of the tax is evidenced by the use of signs or by statements on the menus, as provided by paragraph (d) (3) of § 101.13, the gross receipts for each day should be entered in the daily record.
"(2) Such records shall contain sufficient information to enable the Commissioner to determine whether the correct amount of tax has been paid. The records shall at all times be open for inspection by internal revenue officers, and shall be maintained for a period of at least four years from the date the tax became due.
"(3) Where the passing on of the tax to the patrons is evidenced by entries on waiters' checks or bills or by the use of a cash register, the waiters' checks or bills or the cash register tapes must be kept by the establishment for a period of not less than six months."
Temporary Treasury Regulation § 148.-1–6 Reporting and Payment of Cabaret Tax on Amounts Received by Concessionaires.
"(c) *Duties of proprietor*— * * *
"* * * * * *
"(4) *Records of proprietor.* In addition to any other records required to be kept by a proprietor of a roof garden,

tiffs kept no such records for the period in question. It is clear from the evidence that, regardless of when the Avenue did open, it operated for some hours under non-cabaret status and during others as a cabaret. And under the standard in Lethert v. Culberton's Cafe, Inc., 313 F.2d 506 (8th Cir. 1963), those receipts taken in during entertainment hours are subject to tax. When a taxpayer fails to keep accurate records of his business operations, the Commissioner has a right to use the best evidence available to determine what receipts are subject to the tax. See Hallabrin v. C. I. R., 325 F.2d 298 (6th Cir. 1963); Fuller v. C. I. R., 313 F.2d 73 (6th Cir. 1963).

 The Government agent, Stephen Basarab, admits, however, that he made his calculation of 95% assuming certain facts, one of which was that the bar opened at 5:00 p. m. I find from the evidence available that the bar was open by 3:00 p. m. in the afternoon and probably earlier. The plaintiffs contend, relying on Helvering v. Taylor, supra, that if I should then find the Government's figure of 95% erroneous because unreasonable, then they shall prevail. If the 95% figure is erroneous it is not because of an unreasonable method of calculation by the Government, but rather because of one which included certain wrong factors. And Agent Basarab tacitly admits this. The Government cites Cohan v. Commissioner of Internal Revenue, 39 F.2d 540 (2nd Cir. 1930) as setting forth the better-reasoned approach to determine liability. The Cohan case is indeed more apt. Any determination is bound to be arbitrary. I, likewise [confined to the evidence in this case—which is somewhat more complete than that on which Basarab depended] determine that because the bar was open longer than the Government thought, a more reasonable figure is 85% from July 1952 through 1959. Levine v. C. I. R., 324 F.2d 298 (3rd Cir. 1963). The 95% figure *is* reasonable for the period from May 1950 through July 1952.

 The plaintiffs are also liable for certain penalties on the taxes owed in the form of percentage additions to the tax—depending on the years involved. For the years 1950 through 1954 the applicable statute is § 3612(d) (1) 1939 Code, the pertinent portion of which reads:

"(d) *Additions to Tax.*—

"(1) *Failure to file return.*—In case of any failure to make and file a return or list within the time prescribed by law, or prescribed by the Commissioner or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax."

It is uncontroverted that plaintiffs have not filed federal excise tax returns for the quarters in the years 1950 through 1954. The addition to the tax, thus, is mandatory. Only if they *had* filed a return and *only after showing* that there was reasonable cause for the late filing could they relieve themselves of the obligation to pay the addition. Since there has been no filing, such elements as "reasonable cause" and "willful neglect" are irrelevant and are not in this portion of

cabaret, or other similar place (see § 101.32(b) of Regulations 43 (26 CFR (1939) Part 101)), the proprietor shall keep as a part of his records:

"(i) The name and address of each person who, as a concessionaire in such place, incurred liability for the tax imposed by section 4231(6) of the Code,

"(ii) A copy of each receipt furnished to a concessionaire pursuant to paragraph "(c)" (1) of this section,

"(iii) A copy of each statement furnished by a concessionaire pursuant to paragraph (b) (1) of this section, and

"(iv) A copy of each statement furnished to the district director pursuant to subparagraph (3) of this subparagraph.

"(26 C.F.R., Sec. 148.1–6)"

the case. Bloch v. United States, 235 F.Supp. 634 (N.D.Ohio 1964). See also C. I. R. v. Acker, 361 U.S. 87, 80 S.Ct. 144, 4 L.Ed.2d 127 (1959).

■ For the applicable quarters from 1955 through 1959 the Code provides for a 50% addition to the tax. Internal Revenue Code of 1954, § 6653(b). Under this section imposing a civil fraud penalty the Government has the burden of showing by clear and convincing proof that the plaintiffs fraudulently did not pay their federal excise taxes. The following colloquy between Sylvan Levin, the plaintiffs' accountant, and Schwait, the Government's attorney, is of interest:

"Q Did you tell Sitnick or Meyers not to file entertainment tax?

A No, I did not.

Q Do you know whether Sitnick or Meyers received any advice from anyone?

A I advised them if they had any entertainment, which would fall into the territory of being Federally taxable, that is if they had any dancing or singing, they were to let me know, so I could send in the proper excise tax forms.

Q And they never let you know?

A I asked them at frequent intervals whether they had any taxable form of entertainment. They said no. So, we did not file it."

Levin's testimony at the trial corroborated what he stated on deposition. And the plaintiffs (and certainly their manager for them) were present at the Avenue a sufficient number of evenings to be aware of the kind of entertainment they were offering. I do not think the plaintiffs are of such low intelligence that they cannot distinguish between singing and strictly instrumental entertainment—especially after having been informed of potential tax liability by their accountant. The Government's evidence is such that the court feels the burden is met, and the 50% addition to the tax for the applicable quarters from 1955 through 1959 was properly assessed. See Mensik v. C. I. R., 328 F.2d 147 (7th Cir. 1964).

■ Finally, the plaintiffs are liable for the penalty under § 6656(a) for failure to make deposit of taxes. The pertinent part of this section reads:

"(a) *Penalty.* In case of failure by any person required by this title or by regulation of the Secretary or his delegate under this title to deposit on the date prescribed therefor any amount of tax imposed by this title in such government depository as is authorized under section 6302 (c) to receive such deposit, unless it *is shown that such failure is due to reasonable cause and not due to willful neglect,* there shall be imposed upon such person a penalty * * *."

It is again undisputed that plaintiffs did not make deposit of federal excise taxes for the years 1955 through 1959. I note the distinction between this penalty and that which is mandatory under § 3612(d) (1) 1939 Code; here, even where there has *never* been a filing (rather than a late filing) plaintiff may show that the failure was due to reasonable cause. The burden is on the plaintiffs, and they must meet their burden by a preponderance of the evidence. And a showing of *ignorance of the law* (which in any event I do not think can be shown here) is not the same as a showing of reasonable cause. Jenkins Est. v. United States, 61–1 U.S.T.C., par. 9433 (S.D.Ga. 1961); Brown v. United States, 56–2 U.S.T.C., par. 9710 (S.D.Fla.1956).[5] And the evidence in this case indicates strongly that the plaintiffs knew of the elements creating excise tax liability for cabarets and of their liability for depositing these excise taxes. Hence, I find the plaintiffs have not met their

5. For analysis of standards used in assessing like though harsher penalties, see Flan v. United States, 326 F.2d 356 (7th Cir. 1964); and Cushman v. Wood, 149 F.Supp. 644 (D.Ariz.1956).

burden and that the penalty under § 6656(a) was correctly assessed.

Counsel shall submit an appropriate order for signature not inconsistent with the findings of fact and of law contained in this opinion.