**Larrye SITNICK and Benjamin Meyers, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 10412.**

United States Court of Appeals Fourth Circuit.

Argued May 31, 1966.

Decided Sept. 21, 1966.

Barry I. Robinson, Baltimore, Md. (Robert L. Sullivan, Jr., Thomas W. Lewis, and Sullivan & Pittler, Baltimore, Md., on brief), for appellants.

Jonathan S. Cohen, Atty., Dept. of Justice (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson and Deene R. Goodlaw, Attys., Dept. of Justice, and Thomas J. Kenney, U. S. Atty., and Ronald T. Osborn, Asst. U. S. Atty., on brief), for appellee.

Before SOBELOFF and BRYAN, Circuit Judges, and HEMPHILL, District Judge.

SOBELOFF, Circuit Judge.

This is an appeal from a determination by the District Court, sitting without a jury, that the taxpayers were liable for unpaid federal cabaret taxes plus penalties and interest, for the years 1950 through 1959, in the amount of $121,460.14.

In April, 1963 the District Director, acting in behalf of the Commissioner of Internal Revenue, mailed to the taxpayers a "Statement of Tax Due," in the total amount of $255,821.09 for excise tax, penalties, and interest for the period from May 1, 1950 through December 31, 1959. In February, 1964 the taxpayers paid the sum of $1,767.57, representing the excise tax and penalties for the first quarter of 1959, and immediately made claim for refund for that amount. Upon notification by the District Director that their claim for refund was disallowed in full, the taxpayers filed a complaint in the District Court to recover the $1,767.57 which they had paid. The Government counterclaimed for its assessment for the entire period, minus the amount already paid by the taxpayers, which, with penalties, interest, and depository receipts, amounted to $195,181.26.[1]

Taxpayers are the owners of an establishment known as the Avenue Musical Bar (Avenue), in Baltimore, which from May, 1950, when it first opened for business, until July, 1952, consisted of a small bar or lounge, and a larger bar where orchestras hired by the taxpayers played from 9:00 p. m. until the closing hour of 2:00 a. m., and on Sundays from 6:00 p. m. to 8:00 p. m. The District Court found that no entertainment of any kind was offered in the lounge, and therefore no cabaret taxes were due on the lounge receipts. Since the Government does not appeal from this ruling, the remaining issue concerns the taxes assessed in respect of the main bar's receipts.

The controlling statutory provisions of the Internal Revenue Code of 1954 are section 4231(6), which imposes a cabaret tax of 20% of the gross receipts, and section 4232(b), which defines the type of establishment to which the cabaret tax applies.[2]

■■ The entertainment provided by the Avenue in its main bar was predominantly instrumental music. (The taxpayers usually engaged popular orchestras or combos specializing in progressive jazz, (a type of music which the appellants assert does not lend itself to vocalization.) However, the Government adduced evidence showing that, in addition to the playing of instrumental music, some of the musicians sang, joked and

1. According to the pre-trial stipulation and order, the Government abandoned its claim for the imposition of a 100% penalty under § 1718(c) of the Internal Revenue Code of 1939.

2. "§ 4231(6) CABARETS.—A tax equivalent to 20 percent of all amounts paid for admission, refreshment, service, or merchandise, at any roof garden, cabaret, or other similar place furnishing a public performance for profit, by or for any patron or guest who is entitled to be present during any portion of such performance. The tax imposed under this paragraph shall be returned and paid by the person receiving such payments, * * *."

"§ 4232(b) ROOF GARDEN, CABA-RET OR OTHER SIMILAR PLACE. —The term 'roof garden, cabaret, or other similar place,' as used in this chapter, shall include any room in any hotel, restaurant, hall, or other public place where music and dancing privileges or any other entertainment, *except instrumental or mechanical music alone*, are afforded the patrons in connection with the serving or selling of food, refreshment, or merchandise." (Emphasis supplied.)

The taxable period from 1950 to the enactment of the 1954 Code is governed by § 1700(e) of the Internal Revenue Code of 1939. This section, however, does not differ materially from §§ 4231(6) and 4232(b) of the 1954 Code.

performed various "novelty numbers." The taxpayers contend that such entertainment was infrequent, sporadic, and spontaneous, and that when it did occur, the taxpayers were not present, and furthermore had left explicit instructions that any singing or dancing was to be stopped. Much of the Government's evidence related to the character of the entertainment provided by these performers while working in other establishments, which would not necessarily be the same as offered by them at the Avenue. There was evidence, however, in newspaper reviews, that they habitually did sing at the Avenue as well as other places. Moreover, some witnesses, including performers, other employees and patrons, testified explicitly that there was singing at the Avenue. The weight of all of the testimony as to the extent and regularity of such performances was for the trier of fact. There is enough in the record to support the District Court's finding that the singing and telling of jokes by some of these performers was a "regular feature of the entertainment at the Avenue,"[3] and the court's conclusion that this was sufficient to take the entertainment out of the solely instrumental exception of section 4232(b) is legally correct. See United States v. Ritchie, 327 F.2d 732 (5th Cir. 1964); Lethert v. Culbertson's Cafe, Inc., 313 F.2d 506 (8th Cir. 1963).

■ It is well established that the cabaret tax is to be imposed only on receipts of the business during the hours when taxable entertainment is provided. Lethert v. Culbertson's Cafe, Inc., supra; United States v. Eddy Brothers, 291 F.2d 529 (8th Cir. 1961); Riddell v. La Jolla Casa De Manana, 206 F.2d 925 (9th Cir. 1953), affirming per curiam, 106 F.Supp. 132 (S.D.Cal.1952). Thus an issue before the District Court was what percentage of the total gross receipts was taken in between the hours of 9:00 p. m. and 2:00 a. m. (6:00 p. m. to 8:00 p. m. on Sundays), when the orchestra performed, since it was agreed that the establishment was open earlier than 9:00 p. m. but did not provide entertainment until that hour.

The Government based its initial counterclaim on its determination that 95% of the receipts from the main bar were taken in during the hours when entertainment was provided. The taxpayers contended that 50% was a more correct figure. The District Court, however, determined from the evidence presented that a reasonable figure for the period from July, 1952 through 1959 was 85%. Taxpayers rely on Miller v. United States, 296 F.2d 457 (7th Cir. 1961), to support their contention that once the Government's assessment is shown to be excessive, the burden is on it "to show whether any deficiency exists and, if so, the amount." 296 F.2d at 460. But that case goes on to say:

"The fact, however, that the assessment was excessive does not mean that evidence cannot be submitted which justifies an assessment in some lesser amount. When the assessment is shown to be erroneous, it is the duty of the *court* to determine what amount of tax, if any, is proper." Ibid. (Emphasis supplied.)

■ The District Court made its determination of 85% as a proper figure on the evidence before it. This estimate cannot be deemed clearly erroneous, particularly in light of the fact that the taxpayers kept no adequate records as required by Treasury Regulations 43, § 101.32(b). See Hallabrin v. C. I. R., 325 F.2d 298 (6th Cir. 1963).

■ The sufficiency of the evidence to support the finding of fraud, however, presents a closer question than the finding that the taxpayers were liable for cabaret taxes. It is not enough for the Government merely to show that excise taxes were due, if—as the taxpayers claim—their failure to file excise tax returns was due to a good faith, though mistaken, belief that they were not providing taxable entertainment. On this issue, the burden of proof was on the Government, as the District Court clearly

3.  244 F.Supp. 656, 660 (D.Md.1965).

recognized.[4] See Internal Revenue Code of 1954, § 7454. We have already stated that the District Court found that singing, joking, and the performance of "novelty numbers" was a "regular feature" of the entertainment offered. The court expressly discredited the testimony of the taxpayers that they remained ignorant through the years that taxable entertainment was being offered by their establishment, or that they ever seriously attempted to stop it. In addition, there was testimony that the taxpayers were warned "at frequent intervals" by their accountant that should there be any singing they would be liable for the excise tax. In these circumstances, the District Court's affirmance of the fraud penalty will not be set aside.

Affirmed.

4. The District Court stated that:
   "Under this section [§ 6653(b)] imposing a civil fraud penalty the Government has the burden of showing by clear and convincing proof that the plaintiffs fraudulently did not pay their federal excise taxes." 244 F.Supp. at 663.