**Rocco DeNUBILO and Anthony DeNubilo, d/b/a Roc's Tavern, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 8714.**

United States District Court N. D. New York.

Oct. 26, 1967.

Louis Lombardi, Schenectady, N. Y., for plaintiffs, Gerard R. Gemmette, Schenectady, N. Y., of counsel.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., for defendant, Mitchell Rogovin, Asst. Atty. Gen., David A. Wilson, Jr., Daniel J. Dinan, Attys., Dept. of Justice, Washington, D. C., of counsel.

JAMES T. FOLEY, Chief Judge.

Memorandum-Decision and Order

This action was filed to recover $469.-68, an amount of federal excise taxes and deficiency interest paid by the plaintiffs after audit and assessment by the Internal Revenue Service, for the first quarter of 1956. The issue regarding this specific and somewhat small amount of money was tried to the Court. A substantial trial record was compiled. The excise taxes computed relate to the business receipts of the brother-plaintiffs in the conduct of a restaurant/tavern in which entertainment of the kind subject to the federal excise tax was provided on Saturday nights during the quarterly time period for the patrons.

It should be noted at the outset there has been a prelude with a legal question still open that may entail more substantial amounts of money for later determin-

ation, if there is further appellate review and decision different from one I previously made. To explain: A deficiency for excise taxes was assessed against the plaintiffs covering not only the quarter in issue now, but also for the other quarters of 1956 through June 1959, i. e., an additional thirteen quarters. This action as originally filed sought only the recovery of the $469.68 amount and interest paid for the first quarter of 1956. The plaintiffs moved to amend their complaint to include an additional $5,485.81 paid to meet deficiency assessments including interest for the other thirteen quarters that followed the one involved in the complaint. By decision dated October 30, 1964, I denied the motion basically for the reason that in my judgment a proper refund claim had not been filed previous to payment of the assessment as provided for in 26 U.S.C. § 7422(a) to recover these sums. An appeal from this decision was dismissed by the Court of Appeals, Second Circuit, on the ground the order based thereon denying leave to amend the complaint was interlocutory, not final and therefore non-appealable at that stage. (DeNubilo v. United States, 2 Cir., 343 F.2d 455 (1965). My responsibility now is to decide only the limited first quarter dispute.

The $469.68 total amount is made up of the excise taxes assessed by the government for this first quarter in issue in an amount of $364.09, the remainder being $105.59 interest. The situation is not one wherein the plaintiffs contend their business was not subject at all to any excise tax for the entertainment provided by an instrumentalist trio for dancing on Saturday nights in the dining room of the tavern from 9 P.M. to 2 A.M. Plaintiffs did file an excise tax return properly for the quarter and duly paid $96.35. At the trial the plaintiffs' witness Ertel, a former Internal Revenue Agent, held forth as an expert in the estimate and computation of such excise taxes, testified in his judgment the total excise tax due for the first quarter in 1956 from the plaintiffs was $96.10.

This recognition by payment establishes there is no dispute by plaintiffs that the tavern was at the time of the music with dancing privileges available a cabaret as defined in Section 4232(b), Internal Revenue Code, 1954, (26 U.S.C. 1964 ed.), and subject to the excise tax imposed by Section 4231(6), Int.Rev. Code, 1954 (26 U.S.C.1964 ed.). The contention by the plaintiffs on this issue is that only the receipts of the dining room were subject to the excise tax because that was the only room in the tavern where the three instrumentalists played without any vocalist or a P.A. system for broadcast throughout the rest of the tavern, and also was the only room of the three-room tavern where a dance floor for the patrons existed.

This is the first issue to be decided in accord with the pertinent facts developed at the trial. The taxpayers urge that the barroom or bar/lounge that seated from 45 to 50 people was separate to such extent that any business receipts received there during the entertainment period were not subject to the excise tax. The resolution of this question from the record must be determined from the application and interpretation of the so-called "separate room" exemption set forth in the Treasury Regulations. It is Treasury Regulation 43 (1941 ed.), Section 101.14, made applicable to the Internal Revenue Code of 1954 by T. D. 6091, 1954–2 Cum.Bull. 47. It is entitled as Scope of Tax, and reads in part:

"(c) Amounts paid for refreshment, service or merchandise in a room which is entirely separate from the room in which the entertainment is furnished are not subject to the tax, provided that the patrons in such separate room may not witness the entertainment and any door in the wall or partition separating the two rooms remains closed during the period of entertainment except when persons pass from one room to the other."

I am unable to find facts in this record that would satisfy the requirements of

this regulation adopted in accordance with the law in the physical situation here. There are three rooms in the tavern, a barroom or bar/lounge, previously described, a dining room seating about seventy-five people, and a kitchen. Men's and ladies' rooms are off the dining room, and in order to reach them bar/lounge patrons must go through part of the dining room. The dining room is separated from the bar/lounge by a partition, but the important and significant difference from the language of the regulation is that archways are present in the partition of substantial width from 8 to 10 feet. These archways had drapes never completely closed, through which even if fully closed there was at least some visibility for the patrons to see the dancing figures in the dining room, and it seems from the closeness of the bar and lounge, hear the trio when they played for the dancing hours. (Tr. 49–50; 60–61; 63–65; 159–160). The transcript testimony noted was portions of that of the brother, Anthony DeNubilo, in this regard. The Internal Revenue Agents' observations in 1959 when they made a surveillance of the bar/lounge while unknown to plaintiffs, and acting as friendly customers, is in a similar vein. (Tr. 110, 152–154). My finding on the issue is that patrons were able to and did freely move from the bar/lounge to the dining room when the music was playing. The patrons in the bar/lounge could view the dancers, participate with them if they so desired, hear the music, and were allowed to go from the barroom to dance without becoming dining room customers. I find a conglomeration of activity with no true physical or management separation that would allow the taxpayers to come within court distinctions that favored the taxpayer. A good review of the varied problems concerning separateness and the court rulings is found in Jones, d/b/a Club Top Hat v. District Director of Int. Rev. (E.D.Mo.), 241 F.Supp. 531; see also Sitnick et ano. v. United States (D. C.Md.), 244 F.Supp. 656; In re Duffin (S.D.Calif.), 141 F.Supp. 869, 871. Although discussing another phase of problems in this excise tax area there is ex-

tensive coverage of the statutory history of the sections presently involved. (See Lethert v. Culbertson's Cafe, Inc., 8 Cir., 313 F.2d 506).

As I have found the separate room exception has not been proven by the Plaintiffs, the next step is to discuss the mathematical computation the government made for tax assessment purposes after running test periods in 1959 in order to arrive at the percentage of the gross receipts of the tavern that were subject in 1956 to the excise tax. This came about due to the determination of Internal Revenue Agent Roesler that the records kept by the taxpayers in 1956 were inadequate. It was necessary, as he testified, to reconstruct the assessment from the available records of 1956 by relation to the gross receipts of 1959 actually taken in on consecutive Saturday nights during the test periods conducted with the consent of the taxpayers. The 1956 records were not too revealing as to receipts during entertainment hours because the Saturday receipts lumped the dining room and lounge receipts for the day, and stated the bar receipts separately, and none of the receipts were broken down for the entertainment hours. (Tr. 68, 76, Pl.Exs. 5, 6, 7). The figures for 1956 in the records were taken from cash register tapes and guest checks mostly unproduced and testified to as having been destroyed.

The work papers and testimony of Agent Roesler explain the manner of application of the 1959 test period receipts and their relation to the 1956 receipts of the period in question that brought him to the conclusion 76% of the total receipts for Saturday nights during the first 1956 quarter were taxable as attributable to the entertainment hours. (Def.Ex.A, Tr. 133–137, 140). This accounting procedure, from its statement, would seem to necessitate mathematical magic and legerdemain beyond human capacity to so relate back, but in my judgment the analysis is persuasive, reasoned and particularly well supported by competent foundation, and therefore acceptable. I am unable to accord the same respect to the

opinion of the plaintiffs' expert which admittedly was based mainly upon free-wheeling estimates of Anthony DeNubilo as to the percentage allocation of receipts to the different rooms and to the entertainment hours he thought proper. (Tr. 68–76; 84–85). There was serious objection to Pl. Ex. 8 which I reserved upon being the work sheet of Ertel that brought him to the computation of $96.10 as the proper tax for the 1956 quarter. (Tr. 80, 86, 103). Doubtless, this exhibit is weak in its foundation because it is admittedly based in large part on the estimates of the interested taxpayers made as described above. However, I shall receive it in evidence for what it is worth. There is better-based fault-finding with the government agents' computation in that the 2–3 A.M. receipts may have been tabulated on cash register tapes in 1959 and used by the government agent when plaintiffs contend there was no entertainment; amounts received for off-premises consumption and for refreshments sold to employees admittedly not taxable even during entertainment hours may have been on the tapes, and thus would make incorrect to some unproven extent the basic percentage determination of the agent.

However, there is no proof in this record to support these arguments and assumptions. The burden in this type litigation on the taxpayer is a particularly heavy one. In a tax refund suit claimant must show not only that the Government determination is incorrect, but also the facts from which a correct determination of his tax liability can be made. (Gibson v. United States, 5 Cir., 360 F.2d 457, 461; Helvering v. Taylor, 293 U.S. 507, 514, 55 S.Ct. 287, 79 L.Ed. 623). A taxpayer, in order to recover, must affirmatively prove the correct tax liability for the period involved, and the burden of proof is not carried by merely showing the assessment by the Commissioner is erroneous. United States v. Lease, 2 Cir., 346 F.2d 696, 701, fn. 1; United States v. Ross, 2 Cir., 368 F.2d 455, 457). Where adequate records are not available the Commissioner may determine the amount of tax on a reasonable basis. (Union Stock Farms et al. v. C. I. R., 9 Cir., 265 F.2d 712, 721).

Under these principles, in my judgment, there is a failure on the part of the plaintiffs to sustain the burden of proof imposed upon them by law. Such is my conclusion of law. My findings of fact are contained herein. The complaint is dismissed with prejudice and judgment shall enter in favor of the defendant to such effect.

It is so ordered.