[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Plaintiff has taken this appeal from the defendant commissioner's denial of reassessment and the imposition of tax liability for cabaret tax under C.G.S. 12-542 of the General Statutes. The plaintiff's claim as stated in its complaint (paragraph 9) is "that it is exempt from the cabaret tax" because the definition of a "cabaret or other similar place" under 540(4) of the General Statutes excludes "mechanical music alone or the music of a single performer alone" and that a disc jockey playing mechanical music therefore comes within the statutory exception.
During the period that the tax audit was made, the plaintiff owned and operated a bar and restaurant in the town of Waterford known as the "Graffiti Lounge." At that time it employed Edward Brown, professionally known as the "Duke of Doo-Wop," to entertain its patrons by playing records, tapes and compact discs.
Brown testified at the hearing and displayed the costumes he wore while performing, as well as the various props that he used for comedic effect and in order to mimic musical performance. He also used the recorded music for entertainment purposes by way of lip synchronizing and by using such things as hats, costumes and toy musical instruments to simulate musical performance.
He also testified that he gave dancing lessons to the patrons and danced with them on the dance floor to the recorded music that was being played. He stated that because of the nature of the entertainment that he provided and his interaction with the customers he considered himself to be a performer or an entertainer rather than a disc jockey. CT Page 8241-A
The statutory definition of "cabaret" as it applies to the facts of this case is "any . . . restaurant . . . where music, dancing privileges or any other entertainment, except mechanical music alone or the music of a single performer alone, are afforded the patrons in connection with the serving or selling of alcoholic beverages. . . ." General Statutes 12-540(4).
After the determination of his tax liability had been made, David Waddington, the principal of the plaintiff corporation, wrote a letter to the department of revenue services stating that his interpretation of the statute was that "if you have dancing privileges by the music of a single performer alone you are exempt from this tax," and requested the basis for the department's conclusion that he was liable for the tax assessed against him. Plaintiff's, Exhibit B.
The department's response by letter dated August 1, 1989, from Frederick P. Clark, a tax attorney in the legal division, stated in the opinion of the defendant that disc jockeys, as well as comedians, magicians and hypnotists constitute "other entertainment" within the meaning of the statute. Plaintiff's Exhibit C. The letter stated that "[w]here a disc jockey is hired, mechanical music alone is not being afforded to patrons. Disc jockeys are not musicians, so the music of a single performer alone is not being afforded to patrons." Id.
Further testimony as to the interpretation by the department of the term "mechanical music alone" was given by James Northrop, an audit supervisor, who stated that it has consistently been interpreted as a juke box or piped in music and that "music of a single performer alone" refers to a single musician, whether an instrumentalist, a vocalist or both. Northrup also testified that the consistent interpretation of the commissioner has been that the provision of dancing privileges alone triggers cabaret status.
These administrative interpretations appear to be consistent with 12-542 of the General Statutes which imposes the tax "on any cabaret or similar place furnishing music, dancing privileges or any other entertainment. . . ." It is also apparent from the legislative history that it was the legislative intent to exempt background music such as that played in piano bars and on jukeboxes.
Senator Darius Spain, in his comments on the 1972 amendment which excluded from the definition of "cabaret," places CT Page 8241-B where a single performer plays music, referred to it as an "exemption" from the cabaret tax for restaurants that had background music. 15 H.R. Proc., Pt. 4, 1972 Sess., p. 1448. Senator Beck's statement of the purpose of the 1977 amendment which expanded the exemption to include "music of a single performer alone" was that it was meant to be applicable to "single vocalists essentially, although it could be other kinds of performers." 20 S. Proc., Pt. 7, 1977 Sess., p. 2930. It should be noted that the word "alone" is clearly referable to the word music, indicating that a performance of a non-musical nature would not come within the exemption. Under the virtually identical provisions of 4232(b) of the Internal Revenue Code of 1954 the federal courts have held that the "solely instrumental exception" of the cabaret tax statute was inapplicable where the entertainment provided by the musicians included singing, joking and "novelty numbers"; Sitnick v. United States, 367 F.2d 282 (4th Cir. 1966); and that a pantomime act would also be taxable as "any other entertainment." Erickson v. United States, 228 F. Sup. 421, 422 (N.D. Ga. 1963).
In its post-trial brief, the plaintiff asks the court to construe the statute which imposes the tax strictly against the state and in favor of the plaintiff "because it is not subject to the statute by definition," and is therefore not claiming an exemption. However, it should be noted that Senator Spain referred to the 1972 amendment as an "exemption" as did Mr. Waddington in his letter of inquiry as to the basis of his tax liability, and most significantly, in paragraph 9 of the complaint, the plaintiff maintains that "it is exempt from the cabaret tax."
"[S]tatutes that provide exemptions from taxation are a matter of legislative grace that must be strictly construed against the taxpayer." Plastic Tooling Aids Laboratory, Inc. v. Commissioner of Revenue Services, 213 Conn. 365, 369. "[A]ny ambiguity in the statutory formulation of an exemption must be resolved against the taxpayer [and he] must bear the burden of proving the error in an adverse assessment concerning an exemption." Id.
The court finds that the commissioner's regulatory interpretation of 12-542 of the General Statutes is consistent with its language and the intent of the legislature when it amended the statute in 1972 and 1977. Accordingly, the taxpayer has not sustained its burden of proving there was error in the adverse assessment with regard to the exemption.
For the foregoing reasons, the plaintiff's appeal is dismissed and the defendant's assessment is sustained. CT Page 8241-C
Hammer, Judge